1

2

3

4

5 **UNITED STATES DISTRICT COURT**

6 **EASTERN DISTRICT OF WASHINGTON**

7 SHAUNA BELL,                          No. 2:16-cv-03044-MKD

8              Plaintiff,              ORDER GRANTING PLAINTIFF'S
                                       MOTION FOR SUMMARY
9      vs.                             JUDGMENT AND DENYING
                                       DEFENDANT'S MOTION FOR
10 COMMISSIONER OF SOCIAL             SUMMARY JUDGMENT
   SECURITY,
11                                     ECF Nos. 21, 22
              Defendant.
12

13        BEFORE THE COURT are the parties' cross-motions for summary

14 judgment.  ECF Nos. 21, 22.  The parties consented to proceed before a magistrate

15 judge.  ECF No. 6.  The Court, having reviewed the administrative record and the

16 parties' briefing, is fully informed.  For the reasons discussed below, the Court

17 grants Plaintiff's motion (ECF No. 21), in part, and denies Defendant's motion

18 (ECF No. 22).

19                              **JURISDICTION**

20        The Court has jurisdiction over this case pursuant to 42 U.S.C. § 405(g).

## STANDARD OF REVIEW

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g). The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error." *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Id*. at 1159 (quotation and citation omitted). Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance." *Id.* (quotation and citation omitted). In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation. *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012). Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless." *Id.* An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."

*Id.* at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shinseki v. Sanders*, 556 U.S. 396, 409-10 (2009).

## FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do [her] previous work[,] but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. § 404.1520(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 404.1520(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 404.1520(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 404.1520(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 404.1520(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite her limitations, 20 C.F.R. § 404.1545(a)(1), is relevant to both the fourth and fifth steps of the analysis.

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that she has performed in the past (past relevant work). 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 404.1520(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 404.1520(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant numbers in the national economy." 20 C.F.R. § 404.1560(c)(2); *Beltran v. Astrue*,

700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for Title II disability insurance benefits on March 19, 2013,[1] alleging a disability onset date of February 1, 2011. Tr. 170-78. The application was denied initially, Tr. 94-104, and on reconsideration, Tr. 106-10. Plaintiff appeared at a hearing before an Administrative Law Judge (ALJ) on July 22, 2014. Tr. 29-58. At the hearing, Plaintiff amended her alleged date of onset to January 22, 2011. Tr. 32. On October 8, 2014, the ALJ denied Plaintiff's claim. Tr. 14-23.

At step one, the ALJ found that Plaintiff has not engaged in substantial gainful activity since January 22, 2011, the amended alleged onset date. Tr. 16. At step two, the ALJ found Plaintiff has the following severe impairments: rheumatoid arthritis; fibromyalgia; and mild cervical disc disease. *Id*. At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals a listed impairment. Tr. 18. The ALJ then concluded that Plaintiff has the RFC to perform light work, with the following limitations:

> she can lift and carry 20 pounds occasionally and 10 pounds frequently; sit about six hours and stand and/or walk about six hours

---

[1] Plaintiff's protective filing date was March 12, 2013. Tr. 245.

in an eight-hour day with regular breaks. She is unlimited in her ability to push and pull within these exertional limitations. She can frequently climb ramps and stairs and occasionally climb ladders, ropes, and scaffolds. She can frequently balance, stoop, kneel, crouch, crawl, reach, handle, and finger. She should avoid concentrated exposure to hazards.

*Id.* At step four, the ALJ found that Plaintiff is able to perform relevant past work as a medical assistant. Tr. 22. On that basis, the ALJ concluded that Plaintiff was not disabled as defined in the Social Security Act during the adjudicative period, January 22, 2011 to October 8, 2014.[2] Tr. 22-23.

On February 25, 2016, the Appeals Council denied review, Tr. 1-6, making the Commissioner's decision final for purposes of judicial review. *See* 42 U.S.C. 405(g); 20 C.F.R. § 422.210.

---

[2] Plaintiff had a prior application that was denied at the initial level on April 22, 2011. Tr. 246. In her decision, the ALJ acknowledged the prior application and stated that "[a]ny discussion of evidence from before that date is for background purposes only and is not an implied reopening." Tr. 14. However, the ALJ's determination is clearly for the period of time from January 22, 2011 to October 8, 2014. Tr. 14-23. Upon remand, the ALJ is instructed to clearly define the adjudicative period and apply res judicata if appropriate or reopen the April 22, 2011 application to allow an onset date of January 22, 2011.

**ISSUES**

Plaintiff seeks judicial review of the Commissioner's final decision denying her disability insurance benefits under Title II of the Social Security Act. ECF No. 21. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly weighed the medical opinion evidence;

2. Whether the ALJ made a proper step three determination; and

3. Whether the ALJ properly discredited Plaintiff's symptom claims.

ECF No. 21 at 9-19.

**DISCUSSION**

**A. Medical Opinion Evidence**

Plaintiff faults the ALJ for discounting the medical opinions of Derek Peacock, M.D.; Doug Sarver, MSPT, CMP; Robert Lantrip, D.C.; and Howard Platter, M.D. ECF No. 21 at 9-15.

There are three types of physicians: "(1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant but who review the claimant's file (nonexamining or reviewing physicians)." *Holohan v. Massanari*, 246 F.3d 1195, 1201-02 (9th Cir. 2001) (brackets omitted). "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a

reviewing physician's." *Id.* "In addition, the regulations give more weight to opinions that are explained than to those that are not, and to the opinions of specialists concerning matters relating to their specialty over that of nonspecialists." *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, an ALJ may reject it only by offering "clear and convincing reasons that are supported by substantial evidence." *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). "However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *Bray v. Comm'r of Soc. Sec. Admin,* 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (*citing Lester v. Chater*, 81 F.3d 821, 830-31 (9th Cir. 1995)).

In this case, the record only contained the medical opinions of Dr. Peacock, Therapist Sarver, Dr. Lanatrip, and Dr. Platter and the ALJ discounted all four of these opinions in some way. Tr. 21-22. In doing so, the ALJ failed to provide substantial evidence to support the RFC determination.

*1. Derek Peacock, M.D.*

On March 5, 2013, Dr. Peacock completed a Medical Questionnaire/Capacity for Work-Type Activity form. Tr. 631. On the form, he checked the box indicating that "I do not believe that this patient is capable of performing <u>any</u> type of work on a reasonably continuous, sustained basis (e.g., eight hours a day, five days a week, or approximately 40 hours per week, consistent with a normal work routine)." *Id*. The ALJ gave this opinion "little weight because there is no explanation for the opinion, he merely checked a box on a form, and because it is not consistent with the claimant's activities of being a primary caregiver for her young children while her husband works full time." Tr. 21. Plaintiff asserts that the opinion is uncontradicted and the clear and convincing standard applies. ECF No. 21 at 15. Defendant challenges the clear and convincing standard in general and asserts that the specific and legitimate standard applies whether or not the opinion is contradicted. ECF No. 22 at 29. The Court will forgo determining which standard applies to Dr. Peacock's opinion as ALJ's reasons fall short of the lessor specific and legitimate standard.

First, the Ninth Circuit has recognized a preference for individualized medical opinions over check-the-box forms, *Murray v. Heckler*, 722 F.2d 499, 501 (9th Cir. 1983); however, when the opinion expressed in a check-the-box form is based on significant experience with a claimant and supported by numerous

records, it is entitled to more weight than an otherwise unsupported and unexplained check-the-box form, *Garrison v. Colvin*, 759 F.3d 995, 1013 (9th Cir. 2014).[3]

Here, the record shows that Dr. Peacock treated Plaintiff as early as March 25, 2010. Tr. 326-27. In total, Dr. Peacock saw Plaintiff five times and the nurse practitioner at his office saw her an additional sixteen times. Tr. 328-31, 476-79, 480-82, 490-515, 640-87. These visits revealed regular synovitis in the upper extremities. Tr. 331, 477, 481, 489, 492, 495, 498, 501, 507, 510, 514, 638, 641, 644, 647, 654, 658, 662, 666, 677. The ALJ failed to address the fact that Dr. Peacock was Plaintiff's treating rheumatologist and rejected his opinion simply because it was on a check-the-box form. This fails to meet the specific and legitimate standard, let alone the heightened clear and convincing standard.

The ALJ's second reason, that the opinion was inconsistent with Plaintiff's activities as a caregiver to young children, is also legally insufficient. A claimant's

_____

[3] Furthermore, the Ninth Circuit has recently held that the fact that an opinion is expressed on a check-the-box form does not constitute a germane reason to discount the opinion of a non-acceptable medical source. *Popa v. Berryhill*, No, 15-16848, slip op. at 5 (9th Cir. Aug. 18, 2017). Accordingly, such reasoning cannot meet the more exacting standards applied to acceptable medical sources.

testimony about her daily activities may be seen as inconsistent with the presence

of a disabling condition. *See Curry v. Sullivan*, 925 F.2d 1127, 1130 (9th Cir.

1990). The Ninth Circuit has recently clarified that the record must provide details

about the nature, extent, and frequently of the childcare activities for them to

"constitute 'substantial evidence' inconsistent with [an examining physician's]

informed opinion." *Trevizo v. Berryhill*, 862 F.3d 987, 998 (9th Cir. 2017); *see*

*also Cysewski v. Astrue*, 290 Fed.Appx 972, 974 (9th Cir. 2008) (Providing fifty

hours a week of childcare to the claimant's grandchildren for pay was not

equivalent to performing the functions of a childcare provider in the workplace.).

Here, Plaintiff stated the following:

> I can make meals for my child, and I can change their diaper, taking
> care of them. And that's what I do with them. I'm not out playing
> with them, wrestling around with them. I'm not able to give them
> baths. That's what my husband does. He helps me get them ready for
> bed. So I was just in the mornings and afternoon. My husband helps
> me with the rest.
>
> I don't take them out when I go out shopping. I wait for my husband
> to get home. Or he's the one that goes out and does that stuff so I'm
> not toting them around town.

Tr. 48-49. Additionally, Plaintiff indicated that her youngest was not very active,

stating that "[he] sits and plays. He's content being able to play on his own. He

plays with his sister. There's times he might bring his toys over to me when I'm

sitting in a chair, run his cars on me." Tr. 52. On her function report, Plaintiff

stated that she feeds her children, changes diapers and clothes and gives the oldest on a shower. Tr. 259, 283. The ALJ is required to provide some explanation to support her conclusion that the claimant's activity is inconsistent with the provider's opinion. *See Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988) (The ALJ is required to do more than offer her conclusions, she "must set forth [her] interpretations and explain why they, rather than the doctors', are correct," to meet the specific and legitimate standard). Here, the ALJ failed to articulate what parenting activities Plaintiff performed that were inconsistent with Dr. Peacock's opinion.

The Court appreciates Defendant's argument that the form used to express Dr. Peacock's, as well as Therapist Sarver's and Dr. Lantrip's, opinion failed to set forth specific limitations on a functional basis that the ALJ could represent in terms of an RFC, and was thus conclusory in nature, *see* ECF No. 22 at 6-9, however, the Court is limited to addressing the reasons the ALJ provided for discounting the provider's opinion. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (The Court will "review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely."). Therefore, the case must be remanded for the ALJ to properly weigh and discuss Dr. Peacock's opinion. Additionally, since Dr. Peacock's opinion is identical to the other opinions of examining providers in the record, which also fail

to set forth a functional analysis the ALJ can represent in terms of an RFC, the ALJ is instructed to call a medical expert to testify upon remand.

### 2. *Doug Sarver, MSPT, CMP*

Similar to Dr. Peacock, Therapist Sarver completed a Medical Questionnaire on March 20, 2013 and checked the box indicating that "I do not believe that this patient is capable of performing <u>any</u> type of work on a reasonably continuous, sustained basis (e.g., eight hours a day, five days a week, or approximately 40 hours per week, consistent with a normal work routine)."  Tr. 632.  The ALJ gave this opinion "little weight because there is no explanation for his opinion and merely checked a box on a form sent by the claimant's representative. Furthermore, Mr. Sarver is not an acceptable medical source and his opinion is not consistent with the claimant's activities of being a caregiver for her two young children."  Tr. 21.

Additionally, on November 20, 2012, Therapist Sarver sent a letter excusing Plaintiff from jury duty because she "is very limited in her ability to tolerate prolonged sitting activity due to her chronic neck, upper back and lower spine issues as a result of her ongoing and difficult to manage rheumatoid arthritis symptoms."  Tr. 419.  He additionally stated that "I strongly feel that patient is not capable of performing this civic duty without significant increase in her pain complaints and likely reduction in her functional capacity."  *Id*.  The ALJ gave this

letter "little weight because he offered no explanation of what he believed the claimant's residual functional capacity to be or why she would be unable to sit through jury duty." Tr. 21.

The ALJ is accurate that Therapist Sarver is not an acceptable medical source. *See* 20 C.F.R. § 404.1502 (Acceptable medical sources are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists.). An ALJ is required to consider evidence from non-acceptable medical sources and non-medical sources. 20 C.F.R. § 404.1527(f). An ALJ must reasons "germane" to each source in order to discount evidence from non-acceptable medical sources and non-medical sources. *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014).

Therapist Sarver's March 20, 2013 opinion is identical to that of Dr. Peacock's. The Court is remanding this case to further address Dr. Peacock's opinion. As such, the ALJ will also address Therapist Sarver's opinion.[4] Likewise, since the case is being remanded the ALJ is to readdress Therapist

_____

[4] As previously noted, the Ninth Circuit has recently held that the fact that an opinion is expressed on a check-the-box form does not constitute a germane reason to discount the opinion of a non-acceptable medical source. *Popa*, No. 15-16848, slip op. at 5.

1    Sarver's November 20, 2012 letter.

2         *3.  Robert Lantrip, D.C.*

3         On May 30, 2014, Dr. Lantrip completed a Medical Questionnaire identical

4    to those completed by Dr. Peacock and Therapist Sarver.  Tr. 645.  He also

5    checked the box indicating that "I do not believe that this patient is capable of

6    performing <u>any</u> type of work on a reasonably continuous, sustained basis (e.g.,

7    eight hours a day, five days a week, or approximately 40 hours per week,

8    consistent with a normal work routine)."  *Id*.  He also sent a letter stating that

9    Plaintiff had been a patient since July of 2010 and that "[b]ecause of arthritis

10   effecting her spine, she is not able to do much more than make it through her

11   regular day.  If she exerts herself in any way it causes a flare up in her symptoms

12   and it renders her immobile."  Tr. 633.  The ALJ gave this opinion "little weight"

13   because the explanation was "vague" and the opinion was "not consistent with the

14   claimant's childcare activities."  Tr. 22.

15        As a chiropractor, Dr. Lantrip is also not an acceptable medical source.  *See*

16   20 C.F.R. § 404.1502.  Therefore, the ALJ can reject his opinion for reasons

17   "germane" to him.  *Ghanim*, 763 F.3d at 1161.  Dr. Lantrip's opinion is identical to

18   Dr. Peacock's.  The Court is remanding this case for the ALJ to properly address

19   Dr. Peacock's opinion; therefore, the ALJ is further instructed to readdress Dr.

20   Lantrip's opinion on remand.

1      *4. Howard Platter, M.D.*

2          On August 13, 2013, Dr. Platter completed a RFC Assessment after

3   reviewing the records that were in Plaintiff's file at that time.  He opined that

4   Plaintiff could perform a range of light work; however, she was limited bilaterally

5   to occasional reaching, handling, and fingering due to the rheumatoid arthritis

6   resulting in synovitis in her hands and cervical spine arthritis.  Tr. 84-85.  The ALJ

7   rejected Dr. Platter's opinion as to Plaintiff's limitation in the use of her upper

8   extremities because it was inconsistent with her "ability to independently care for

9   activities of daily living and take care of an infant, now a toddler, in addition to her

10  daughter."  Tr. 22.

11         The ALJ is required to consider prior administrative medical findings and

12  medical evidence from State agency medical consultants.  S.S.R. 96-6p.[5]  And the

13  ALJ's determination must be supported by substantial evidence.  *Hill*, 698 F.3d at

14  1158.  Here, Dr. Platter is the only acceptable medical source who provided an

15  opinion that could be represented in the form of an RFC.  Tr. 84-85.  In doing so,

16  he addressed the use of Plaintiff's upper extremities and opined Plaintiff was

17  _____

18  [5] On March 27, 2017, S.S.R. 19-9p was rescinded and 20 C.F.R. § 404.1513a(b)

19  was enacted, which also requires the ALJ to consider the opinions of State agency

20  medical consultants.

limited to occasional use.  *Id*.  In contrast, the ALJ found her capable of frequent

use of the upper extremities.  Tr. 18.  In his determination, the ALJ fails to cite to

any medical evidence that supports a limitation to frequent use of the upper

extremities over the opined occasional use.  Tr. 14-23.  Additionally, since the ALJ

is instructed to readdress the opinions of the other medical source opinions in the

record upon remand, she is also instructed to readdress Dr. Platter's opinion.

### B.  Step Three

At step three, the ALJ is required to determine whether Petitioner's

impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P,

App. 1.  20 C.F.R. § 404.1520(d).  Petitioner asserts that the ALJ errored by failing

to properly consider listing 14.09 and the use of Plaintiff's upper extremities in her

decision.  ECF No. 21 at 16-17.

Petitioner has the burden of proof at step three and must show that she meets all criteria of a Listing. *Tackett*, 180 F.3d at 1098. An ALJ is required to "evaluate the relevant evidence before concluding that a claimant's impairments do not meet or equal a listed impairment." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). However, the ALJ is not required to "state why a claimant failed to satisfy every different section of the listing of impairments." *Gonzalez v. Sullivan*, 914 F.2d 1197, 1201 (9th Cir. 1990). Rather, the ALJ is only required to adequately state the "foundations on which the ultimate factual conclusions are based." *Id*.

Under subpart A of the 14.09 Listing Requirements, a claimant meets the requirements for inflammatory arthritis if she has persistent inflammation or persistent deformity of "[o]ne or more major peripheral joints in each upper extremity resulting in the inability to perform fine and gross movements effectively (as defined in 14.00C7)." 20 C.F.R., Pt. 404, Subpt. P, App. 1, § 14.09(A).

Under the Listing, the "inability to perform fine and gross movements effectively" means "an extreme loss of function of both upper extremities." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00(B)(2)(c). The impairment must interfere "very seriously" with the claimant's ability to "independently initiate, sustain, or complete activities." *Id*. Examples of an inability to perform gross and fine movements include the inability to prepare simple meals and feed oneself, to take care of personal hygiene, and to file papers in a cabinet at waist level. *Id*.

1    Here, since the ALJ is has been instructed to further evaluate the all the

2    medical opinions in the file upon remand and call a medical expert to testify at

3    additional proceedings, she is also instructed to ask the medical expert to address

4    the use of Plaintiff's upper extremity and consider the expert's opinion when

5    making a new step three determination.

6    **C.  Adverse Credibility Finding**

7        Plaintiff faults the ALJ for failing to provide specific findings with clear and

8    convincing reasons for discrediting her symptom claims.  ECF No. 21 at 18-21.

9        An ALJ engages in a two-step analysis to determine whether a claimant's

10   testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must

11   determine whether there is objective medical evidence of an underlying

12   impairment which could reasonably be expected to produce the pain or other

13   symptom alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).

14   "The claimant is not required to show that her impairment could reasonably be

15   expected to cause the severity of the symptom she has alleged; she need only show

16   that it could reasonably have caused some degree of the symptom."  *Vasquez v.*

17   *Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

18       Second,  "[i]f the claimant meets the first test and there is no evidence of

19   malingering, the ALJ can only reject the claimant's testimony about the severity of

20   the symptoms if she gives 'specific, clear and convincing reasons' for the

rejection." *Ghanim*, 763 F.3d at 1163 (internal citations and quotations omitted).

"General findings are insufficient; rather, the ALJ must identify what testimony is

not credible and what evidence undermines the claimant's complaints." *Id.*

(quoting *Lester*, 81 F.3d at 834); *Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir.

2002) ("[T]he ALJ must make a credibility determination with findings sufficiently

specific to permit the court to conclude that the ALJ did not arbitrarily discredit

claimant's testimony."). "The clear and convincing [evidence] standard is the most

demanding required in Social Security cases." *Garrison*, 759 F.3d at 1015

(quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

　　　　In making an adverse credibility determination, the ALJ may consider, *inter*

*alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the

claimant's testimony or between her testimony and her conduct; (3) the claimant's

daily living activities; (4) the claimant's work record; and (5) testimony from

physicians or third parties concerning the nature, severity, and effect of the

claimant's condition. *Thomas*, 278 F.3d at 958-59.

　　　　The ALJ found that while Plaintiff's medically determinable impairments

could reasonably be expected to cause some of the alleged symptoms, she found

Plaintiff less than fully credible concerning the intensity, persistent and limiting

effects of the reported symptoms. Tr. 19. The ALJ found Plaintiff's symptom

reports less than fully credible because the objective evidence was inconsistent

with the allegations and the alleged symptoms were inconsistent with her ability to care for her children and perform her other reported daily activities, including light housework. Tr. 19-21.

Considering this case is being remanded for the ALJ to properly address the medical opinions in the file, the ALJ is further instructed to readdress Plaintiff's symptom statements.

## D. Remand

Plaintiff urges the Court to remand for immediate award of benefits. ECF No. 21 at 20-21. To do so, the Court must find that the record has been fully developed and further administrative proceedings would not be useful. *Garrison*, 759 F.3d at 1019-20; *Varney v. Sec. of Health and Human Servs.*, 859 F.2d 1396, 1399 (9th Cir. 1988). But where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find a claimant disabled if all the evidence were properly evaluated, remand is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80 (9th Cir. 2000).

Here, it is not clear from the record that the ALJ would be required to find Plaintiff disabled if all the evidence were properly evaluated. Further proceedings are necessary for the ALJ to properly address Plaintiff's impairments at step three,

properly weigh medical opinions in the record, and address the credibility of

Plaintiff's symptom reports.  The ALJ is instructed to supplement the record with

any outstanding evidence and take testimony from a medical and a vocational

expert at a remand hearing.

## CONCLUSION

**IT IS ORDERED:**

1.  Plaintiff's motion for summary judgment (ECF No. 21) is **GRANTED, in part,** and the matter is **REMANDED** to the Commissioner for additional proceedings consistent with this order**.**

2.  Defendant's motion for summary judgment (ECF No. 22) is **DENIED.**

3.  Application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order, enter

**JUDGMENT FOR THE PLAINTIFF**, provide copies to counsel, and **CLOSE**

**THE FILE.**

DATED August 24, 2017.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES MAGISTRATE JUDGE